UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **MARVIN EDWARD WARE** | **CIVIL ACTION NO. 06-0869** |
| VS. | SECTION P |
| **ROBERT TAPPIN, ET AL.** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

REPORT AND RECOMMENDATION

Before the court is Marvin Edward Ware's civil rights complaint (42 U.S.C. §1983) filed *pro se* and *in forma pauperis* on May 24, 2006. Ware is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC); he is incarcerated at the Morehouse Parish Detention Center (MPDC) in Collinston, Louisiana. He complains that he was (1) attacked by a fellow inmate, (2) assaulted by prison guards, (3) wrongfully charged with fighting, (4) then placed in administrative segregation, (5) deprived of certain items of personal property which he claims were stolen, and (6) denied medical treatment in mid-February 2006. He names MPDC Warden Robert Tappin and Corrections Officers Tavares Montgomery, Terrell Brown and Isaac Brown as defendants. He prays for compensatory damages and protection from the defendants.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that his complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing exhaust administrative remedies.

STATEMENT OF THE CASE

*Original Complaint*

1

On February 17, 2006 plaintiff was attacked by a fellow inmate, Michael Peoples. While Peoples was striking plaintiff's face, Deputy Johnson intervened and pulled plaintiff "from under Peoples..." Deputy Brown "snatched" plaintiff from Deputy Johnson and said, "If you want to fight somebody, fight me." Then Brown "slammed" plaintiff to the floor, then "snatched" him back up, and then pulled plaintiff forcefully out of the dormitory. Brown then pushed plaintiff down the hall. Corporal Montgomery then grabbed plaintiff and pulled him forcefully to the booking area. Montgomery "slammed" plaintiff into the wall and told plaintiff to stand and face the wall. [doc. 1-1, paragraph IV]

Warden Tappin then asked plaintiff some questions and left. Tappin returned with Deputy Terrell Brown and Mr. Dorsey and an unidentified person. Tappin and Terrell Brown began to interrogate plaintiff. Brown was talking to plaintiff when plaintiff was suddenly struck twice on his head and face by an unknown assailant. Plaintiff fell to his knees and said, "Go ahead and kill me..." and Deputy Terrell Brown responded, "you want it" while kicking plaintiff. When Brown stopped kicking plaintiff stood up. Plaintiff was dazed and was taken to a lock-down cell where he was stripped down to his underwear. Dys. Montgomery and Terrell Brown were in that cell. Montgomery told plaintiff, "I told you what I was going to do if you lied to me." Plaintiff's right eye was closed, the right side of his face was swollen, and he had sustained a cut under his left eye. Montgomery sprayed plaintiff with hot pepper spray and plaintiff fell to his knees in pain. Plaintiff made his way to the sink and washed the pepper spray from his upper body. [*id.*]

Montgomery returned to the cell and told plaintiff to go take a shower. When the shower was completed, Montgomery gave plaintiff a bag containing plaintiff's personal property. Plaintiff advised Montgomery that seven packages of soup were missing from his property. Montgomery promised to investigate the disappearance of plaintiff's soup. [*id.*]

2

On February 19, 2006, plaintiff made an emergency sick-call requesting an opportunity to be examined by a physician. Sgt. Stone allowed plaintiff to see a nurse instead. The unknown nurse advised plaintiff that once the swelling went down, he could see a physician. Plaintiff advised the nurse that he was coughing up blood, he was experiencing nose bleed, and, that he was urinating more than normal. The official did not document plaintiff's sick call. Plaintiff claims that he fears for his life because nothing was done to Michael Peoples. [*id.*]

On February 17, 2006, Deputy Kashif charged plaintiff with fighting. According to the "Disciplinary Form" executed by Kashif,

> On Friday February 17, 2006 at approximately 10:25 a.m., I Deputy Krim Kashif observed inmate Michael Peoples and Marvin Ware jump out of their beds. Then inmates People and Ware commenced to fighting. There was no sign of self-defense from either inmate. They both were punching. Immediately after I noticed the fight I called 10:18 in Delta on the radio. Assistance arrived and broke up the fight. The inmates were escorted out of the dorm. Marvin Ware was taken to lock down. [doc. 1-1, p. 11]

This disciplinary report was served on plaintiff on February 21, 2006. [*id.*]

On or about April 3, 2006 plaintiff submitted an Administrative Remedy Procedure Request for Grievance Remedy form. Therein he complained,

> While putting my things in a lock-down bag I notice that I only had twelve Cajun Chicken soup. I had just made store the night before and purchase 20 soup and I ate one which left me with nineteen (19). My wall locker was locked, a deputy opened my locker and an inmate packed my stuff and took seven soups for themselves. I just want my soup back please.

The ARP was received by the Warden on April 3, 2006; he apparently rejected it as "invalid" because it was "46 days old." [*id.* ]

Plaintiff claimed, in general, that officers at MPDC enjoy beating on the inmates and spraying them with hot pepper spray. Plaintiff complained that he is sick of being treated like a dog and worries about his future should the prison administration discover what plaintiff has

3

done.

*Supplemental Complaint*

On July 17, 2006, plaintiff submitted a hand-written supplemental complaint. Therein he alleged that during the twenty day period preceding July 17 – (1) plaintiff was not permitted to exercise or otherwise enjoy recreation opportunities; (2) plaintiff's blanket, sheet and pillow case had not been washed; (3) he was provided two sets of clothes which were washed only on Saturday; (4) he was confined to lock-down. He also alleged that on July 15, an inmate confined to a nearby cell was "sprayed with some type of maze..." which caused plaintiff and his cell mate to choke. Plaintiff also claimed that he was given only three cups of water per day and that his "legal mail has been reseal[ed] with clear tape..." He also claimed that a pair of brown tennis shoes were taken from him for no reason. He wrote to Lt. Brown about the shoes and on the following day Sgt. Robinson, accompanied by Dy. Harris and Corporal Ricks entered his cell with the shoes and taunted plaintiff. [doc. 11]

*Motion for Extension of Time*

On August 8, 2006, plaintiff filed a *pro se* Motion for Extension. Therein he claimed that he had been in lock-down since June 28, 2006. He claimed that he was allowed to use pen and paper for only a short time each day. He complained that he had no dictionary and was afforded little time to use the law library. He also complained that he was handcuffed and shackled when he was not in his lock-down cell. Finally, he complained that his legal mail was being delayed. As a consequence, he requested an extension of time to file his amended complaint. [doc. 12]

*Amended Complaint*

The motion was granted and on September 6, 2006, plaintiff filed his Amended Complaint responding to the Memorandum Order of July 19, 2006. [doc. 10] In this Amended Complaint plaintiff stated that he had been convicted of simple burglary on January 7, 2004, and

sentenced to serve twelve years at hard labor. Consequently, plaintiff was an LDOC inmate when the complained of events transpired.

He expanded on the claims made in his original complaint and noted that he was struck in the mouth and jaw "seven or nine times" during the February 17 altercation with inmate Michael Peoples. As a result, plaintiff contended that his "lips were a little puffy and jaw was sore. And that was all of my injuries..." [doc. 13] Plaintiff complained that the prison guards did not sufficiently investigate to determine the identity of the aggressor. He again complained that he was wrongfully charged with fighting, wrongfully convicted of that offense, wrongfully sprayed with pepper spray, and wrongfully placed in lock-down for ten days. [*id*.] Plaintiff complained that he was attacked because of his previous conversations with his fellow inmates concerning the conditions of confinement. [*id*.]

He further complained that Terrell Brown struck two hard blows to the right side of plaintiff's head and face while plaintiff's back was to Brown. He complained that the blows caused plaintiff to fall and once down, Brown kicked him then dragged him out of the dorm. Plaintiff claimed that Brown's blows caused plaintiff's head to swell, caused him to bleed from his nose and mouth, and closed his right eye. Plaintiff claims that this incident resulted in plaintiff "...urinating more than normal..." and caused "...sinus pressure build-up on the top right side of [plaintiff's] mouth and face..." and a toothache. [*id*.]

Plaintiff claims that he was examined by Dr. Ogden, a dentist in Mer Rouge, Louisiana. Dr. Ogden performed an x-ray examination but found nothing wrong with plaintiff's teeth. [*id*.] According to plaintiff on June 1, 2006, his "... head started spinning and [he] almost threw up..." [*id*.]

Plaintiff complained that Tavares Montgomery slammed plaintiff against the wall and sprayed him with hot pepper spray. He also forced plaintiff to strip down to his underwear and

5

remain in the "coldest cell in lock-down in winter time..." The spray caused a burn mark under plaintiff's left eye. [*id*.]

Plaintiff claimed that Warden Tappin was present during the events complained of and therefore could have stopped Terrell Brown from assaulting plaintiff. Additionally, plaintiff complained of the Warden's lock-down policy – "no talking in lock-down or you and everybody in the cell will be sprayed..."[*id*.]

With regard to these claims, plaintiff asserts that he should be exempted or excused from the exhaustion of administrative remedies because "... the Warden was present when I got beat..." and Lt. Brown had advised plaintiff upon his arrival at MPDC, "If you do something that they don't like you will be fixed. He also said that if an inmate try to put anybody in their business, they will be delt with. [sic]" [id.] Further, Lt. Isaac Brown also said, "If an inmate write the Sheriff, the Sheriff will let them know and that inmate will be delt with..." [sic] because "there is no way around us." Plaintiff claims that he was beaten and sprayed for nothing and did not want to upset the prison administration and staff. [sic] However, plaintiff did think it would be appropriate to submit a grievance about his soup, but this grievance, while timely filed "stayed in the box for three or four weeks" and was thus ultimately dismissed as untimely. [*id*.]

Plaintiff further complained that he did not file grievances because he believed that his safety was at stake. In support of this claim he alleged that he was "thrown in lock-down for brushing [his] teeth ..." on May 31, 2006, and again on June 28, 2006. He complained again about the conditions of confinement in lock-down including – (1) dirty bed linens; (2) lack of exercise; (3) no "emergency button" in lock-down to alert corrections officers in the event of an emergency; (4) dirty clothes. He also complained that he was sprayed for talking while in lock-down. [*id*.]

Plaintiff further complained that Lt. Brown approached plaintiff with copies of plaintiff's

6

two ARP grievances and questioned him, "if I let you out of lock-down, will you leave me alone?" Plaintiff assented and on August 7, 2006, he was released from lock-down and allowed to return to the traveling choir. He claimed that he then removed Lt. Brown as a defendant. [*id.*]

He also complained that on June 28, 2006, Sgt Robinson inventoried plaintiff's property and seized his nail clippers, shampoo, lotion and one pair of plaintiff's tennis shoes and dared plaintiff to do something about the situation. [*id.*]

In conjunction with this amended complaint, plaintiff provided a list of inmates in lock-down cell 2 on July 23, 2006. [*id.*] He also provided a signed statement from inmate Billy Ray Blakely claiming that he and plaintiff were sprayed by Sgt. Smith and Cpl. Morrison in lock-down on August 6, 2006, because the inmates were talking. [*id.*]

He also submitted a disciplinary form dated May 31, 2006, and signed by Dy. John Harris. The form states, "I observed inmate Marvin Ware brushing his teeth at 03:15 a.m. I asked the inmate why was he was up at this time he said he had a bad taste in his mouth. He was asked if he was told by the Dorm Officer to go in the wet area for this reason. He said no! Then I Dy. Harris informed Cpl. Matthews about this [s]ituation. He began to argue and debate with Cpl. Matthews and I. Therefore he was told to roll up his things for lock-down." [doc. 13, p. 12] He also provided a copy of the Disciplinary Hearing Results dated June 1, 2006, which indicate that plaintiff was found guilty of the offense. [doc. 13, p. 13]

## LAW AND ANALYSIS

*1. Initial Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A;

7

28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). A district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has provided a complaint which thoroughly outlines his claims for relief. He has filed a Supplemental Complaint and an Amended Complaint. Plaintiff need not be afforded any opportunity for further amendment. Plaintiff is not entitled to the relief he seeks because he has

failed to exhaust available administrative remedies prior to filing suit. Further, with respect to the loss of property claim which was arguably exhausted, plaintiff's claim is frivolous.

## *2. Exhaustion of Administrative Remedies*

42 U.S.C. §1997e, was amended on April 26, 1996, by the Prison Litigation Reform Act (PLRA). As amended, § 1997e(a) mandates exhaustion of administrative remedies prior to filing a civil rights complaint concerning prison conditions. The statute provides,

> (a) Applicability of Administrative Remedies – <u>No action</u> shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted.</u> (emphasis supplied)

This is a prison condition case, exactly the type of case which can best be resolved by the prison officials without resort to judicial action. Plaintiff acknowledged the existence of an administrative remedies procedure at MPDC; in fact, plaintiff availed himself of that procedure with respect to his loss of property claim. However, he also admitted that he failed to exhaust administrative remedies with respect to all other remaining claims before filing this lawsuit as required by 42 U.S.C. §1997e(a).

Plaintiff claims that he is exempt from the exhaustion requirement. He argues that he was not required to exhaust his administrative remedies, because he feared retaliation from prison authorities. [doc. 13, p. 6]

Plaintiff has raised no valid defense for failing to exhaust administrative remedies. See *Wright v. Hollingsworth*, 260 F.3d 357, 358 n. 2 (5th Cir.2001) (holding that the exhaustion requirement "is not jurisdictional and may be subject to certain defenses such as waiver, estoppel or equitable tolling"). The Supreme Court has noted that "<u>we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise</u> ... Here, we hold only that Congress has provided in § 1997e(a) that <u>an inmate must exhaust</u>

9

irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. at 741 n. 6; *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir.2002) (noting that the current version of § 1997e(a) provides for no discretion to excuse exhaustion); *Woodford v. Ngo*, — U.S. —, 126 S.Ct. 2378, 2382-2389 (2006)(the exhaustion required by 1997e(a) is "proper exhaustion" meaning that the inmate must complete whatever administrative review steps are provided in accordance with the applicable procedural rules, without any exception for untimely, unavailable, or procedurally defective attempts at exhaustion.)

In short, plaintiff is not exempt from the PLRA's exhaustion requirement with respect to his present causes of action. Under Federal law, plaintiff must exhaust the administrative remedy procedure before proceeding herein. The statute, as shown above, allows no exceptions. See also *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002), ("... we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. (citation omitted)" )

The plain language of the statute precludes any further action on plaintiff's claims until he has fully exhausted the administrative remedy procedure. See also *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998) (§1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a §1983 suit, rather than while the action is pending... [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation."); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir.1998), *cert. denied*, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999) (dismissal for failing to exhaust administrative remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner

litigation...").

Because plaintiff violated the PLRA by the premature filing of his complaint, dismissal under the *in forma pauperis* statute is appropriate, and serves as *res judicata* with respect to plaintiff's *in forma pauperis* status.  <u>Accordingly, plaintiff may not re-file the instant claims as a pauper even if he does ultimately exhaust his administrative remedies.</u>

> Dismissals under the *in forma pauperis* statute are in a class of their own, acting not as dismissals on the merits but, rather, as denials of *in forma pauperis* status. Typically, but not exclusively, such dismissals may serve as *res judicata* for subsequent *in forma pauperis* filings, but they effect no prejudice to the subsequent filing of a fee-paid complaint making the same allegations. *Marts v. Hines*, 117 F.3d 1504, 1505 (5th Cir.1997) (en banc), *cert. denied*, 522 U.S. 1058, 118 S.Ct. 716, 139 L.Ed.2d 656 (1998).

While *Marts* dealt with *IFP* dismissals for frivolous or malicious complaints, the Fifth Circuit, in *Underwood*, extended the holding to cases in which a prisoner fails to exhaust administrative remedies.

> By choosing to file and pursue his suit prior to exhausting administrative remedies as required, Underwood sought relief to which he was not entitled-that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing Underwood's action with prejudice for purposes of proceeding *IFP. Underwood, supra*, 151 F.3d at 296 (5th Cir.1998).

### 3. Parratt/Hudson Considerations

The only claim which was arguably exhausted[1] was the February 17, 2006, loss of property claim. [see doc. 1-1, p. 10]  Plaintiff implies a claim for seven packages of soup which were lost or stolen. Section 1983 proscribes conduct by any person who, under the color of state

---

[1] The MPDC administration rejected this ARP as untimely. In *Woodford v. Ngo*, — U.S. —, 126 S.Ct. 2378, 2382-2389 (2006) the Supreme Court held that the exhaustion required by 1997e(a) is "proper exhaustion" meaning that the inmate must complete whatever administrative review steps are provided in accordance with the applicable procedural rules, without any exception for untimely, unavailable, or procedurally defective attempts at exhaustion. Thus, untimely ARP's cannot satisfy §1997e's exhaustion requirement. Plaintiff claims, however, that his ARP was timely filed. For the purposes of this Report, the undersigned will accept plaintiff's allegations as true and will assume that his deprivation of property claim was exhausted before he filed suit.

11

law, acts to deprive another person of any right privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. §1983. Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under §1983.

The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Constitution, Amendment XIV. However, the jurisprudence makes it abundantly clear that a prisoner's claim for random deprivation of personal property is not cognizable under §1983.

In *Parratt v. Taylor*, 451 U.S. 527, 544, 107 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913.

The Due Process Clause does not embrace tort law concepts. *Id.* Although a prisoner may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford the prisoner a remedy. *Daniels,* 474 U.S. at 335, 106 S.Ct. at 667. Even in instances where intentional deprivation occurs, as is the case herein, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994). This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing,

*Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

In this case, plaintiff's allegations, accepted as true for purposes of this evaluation, demonstrate that an intentional, random, and unauthorized deprivation occurred when food items were either stolen or lost by a prison official. If adequate state law remedies are available, no further due process is required under the Constitution.

Louisiana law provides plaintiff the opportunity to seek redress for either the negligence of prison officials or an intentional tort committed by employees of the prison facility. See, La. Civil Code, Article 2315. This provision of state law which is the general tort provision of Louisiana's Civil Code provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992).

A liberal construction of plaintiff's complaint fails to support a constitutional violation; plaintiff's arguably exhausted claim is clearly barred by the *Parratt/Hudson* doctrine. Unless plaintiff can show that the defendants violated his constitutional rights, plaintiff's claim is not a cognizable claim under §1983.

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for purposes of proceeding in an *in forma pauperis* proceeding pursuant to 28 U.S.C. § 1915(d). Therefore, if plaintiff exhausts his administrative remedies with respect to the claims raised herein, he can present these §1983 claims again, but he may not proceed *in forma pauperis* to do so;

**IT IS FURTHER RECOMMENDED** that plaintiff's loss of property claim be

**DISMISSED WITH PREJUDICE** as frivolous**;**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 3rd day of November, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE